## APPLICATION AGAINST SOLICITING CUSTOMERS OF A LAUNDRY.

Common Pleas Court of Hamilton County.

THE HOME STEAM LAUNDRY COMPANY v. THOMAS S. SMITH ET AL.

Decided, March, 1909.

*Trade Secrets—Lists of Customers Alleged to be—And to Form Part of the Good Will of the Business—Discharged Employe Solicits Trade of Former Employer—Injunction Proceedings Against Him Dismissed—Confidential Relations—Implied Obligations of Employes.*

Following his discharge from the employment of the plaintiff laundry company, S began to solicit for himself the laundry business on one of the routes of the company. An action was thereupon filed to enjoin him from so doing, the claim of the company being that S had stolen the list of its customers on one of its routes, and that this list was a trade secret, and of great value to the company, and constituted the good will of its business. S denied that he had taken the list, and claimed that the customers on this route belonged to him before his employment with the plaintiff began.

*Held:* That under the testimony a theft of the list by S had not been proven, and an injunction would not lie against him.

*Edwards Ritchie,* for plaintiff.
*Edwin W. Kemper* and *R. M. Ochiltree,* contra.

Edwin W. Kemper cited in support of the motion to dissolve the temporary restraining order:

As to the power of court to grant writs of injunction: Stewart et al v. The Little Miami R. R. Co., 14 O., 358.

As to burden of proof: Spangler v. City of Cleveland, 43 O. S., 526.

As to character of the injury which must be shown: Falls Village, etc., Co. v. Tibbets, 31 Conn., 165; Hovelman v. Kansas City Horse R. Co., 79 Mo., 632; Goodall v. Crofton, 33 O. S., 271.

Where a right is claimed under an agreement set forth: Story's Equity, Sections 825-26-27; Webber v. Gage, 39 N. H., 182; Jordan v. Woodward, 38 Me., 423; Florence Sewing Machine Co. v. Singer Mfg. Co., 8 Blatchf. (U. S.), 113; Shackle v. Baker, 14 Ves., 468; Churton v. Douglass, John, 174.

As to contracts which are against public policy: Lange v. Werk, 2 O. S., 519-525.

Where the relief sought is purely preventive: Wiswell v. First, etc., Church, 14 O. S., 32, Syl. 9.

When an injunction will be denied: Wellman v. Harker, 3 Oreg., 253; Swift v. Jenkins, 19 Fed. Rep., 641.

GORMAN, J.

This is an action to enjoin the defendants from using information claimed to have been a secret of plaintiff's business, knowledge whereof was obtained by defendants while in the employ of plaintiff, to-wit, knowledge of the names and addresses of customers of plaintiff who on certain days and at certain hours of said days were accustomed to give their laundry work to employes of plaintiff, and on certain other days and at certain hours of said days were accustomed to receive their clean laundry work from plaintiff.

It is claimed that both defendants conspired together to quit the employ of plaintiff on the same day, February 27, 1909, and did leave plaintiff's employ on said day, and that on Monday, March 1, 1909, in pursuance of said conspiracy, commenced to solicit laundry work from plaintiff's customers along what is known as route number 5, using knowledge which they acquired while in the employ of plaintiff in a confidential capacity, and by misrepresenting to plaintiff's customers the truth, secured and are securing a large amount of laundry work from plaintiff's customers along route number 5. It is averred that Smith was what is known as the route man and had charge of the lists of plaintiff's customers and their addresses, the route to be followed to reach each customer by the driver in

the shortest time; that these lists are of great value to plaintiff and constitute its good will in the laundry business, and that the knowledge contained in these lists which were under the care of defendant Smith, is a trade secret.

The case is submitted on the petition and answer of defendants, and on the evidence and arguments of counsel. At the close of the evidence it was admitted by counsel for plaintiff that no case had been made out against the defendant, Harry Drake, and with this admission all allegations with reference to a conspiracy between the defendants falls to the ground. Drake was the man who drove the laundry wagon for plaintiff over the route claimed to have been affected. Smith went out occasionally, and went over all the routes at different times for the purpose of observing and inspecting the work. Smith was under no written contract for any specified time and could be discharged at any time. There was no agreement between him and plaintiff to keep secret the matters relating to the routes, but the cards containing the names and addresses and days for calling of all customers upon the various routes were arranged in the best manner possible on an index card system, and kept under lock and key at the office of the plaintiff in the Arcade, in a cabinet, and no one had access to this cabinet or a key thereto except Smith, the president of the company, Mr. Klein, and the young lady in the office. Smith was informed by the president of the plaintiff company on Tuesday, February 23, 1909, that after two weeks his services would not be required any longer. On the same day Drake was told that his services would not be required after two weeks time. There does not appear to have been any fault or complaint against either by plaintiff, but for some reason not disclosed their services were not needed by plaintiff. On Friday, February 26, 1909, both quit work without waiting for the expiration of the two weeks time given them. Before Smith was notified that his services were to be dispensed with, he took from the case all the cards making up route 5, and says that he took them over to his desk at the laundry of plaintiff on Sycamore street for the purpose of checking up and correcting the list. He testified that on Friday, February 26, the day he quit, he put the cards into one of the drawers of his desk at the laundry on Sycamore street,

and gave the key of the card cabinet to Mr. Stuckenborg, the confidential man of the plaintiff company, and at the same time told Stuckenborg that the cards were in the drawer of the desk, and that the drawer of the desk was locked, and gave Stuckenborg the key to the desk drawer.  Stuckenborg admits that Smith gave him both keys on this day, at the time and place mentioned by Smith, but denies that Smith said anything about the cards containing the names of route 5, and says that he has searched the drawers of the desk and that no cards are to be found.  The young lady in the Arcade office says the cards are not in the cabinet and that she has not seen them since Mr. Smith took them away.  On Friday after Smith left the employ of plaintiff, he went around to practically all the customers on route 5 and told them that on Monday, March 1, 1909, he intended to start in business for himself and solicited their patronage.  He testified that these sustomers with a very few exceptions were old friends and customers of his personally, who had dealt with him before he was employed by plaintiff; that he had been in the laundry business for thirteen or fourteen years, and that these old customers were secured by him and brought to the plaintiff company from other laundries because of their friendship for him, and this evidence is undisputed.  There were a few of the customers of the plaintiff secured by Smith whom he admits were not his old customers.  He testified, and his testimony is uncontradicted, that he made no misrepresentation to any of plaintiff's customers to secure their patronage, but on the contrary, told them all that he had been discharged or had quit work for plaintiff, and intended to go into the laundry business for himself, and that on account of their acquaintance with him for many years and his promise to do good work, they all promised and agreed to give him their work, and they did so.

The new driver of plaintiff who went over route number 5 on Monday, found that Smith had preceded him and had gotten practically all the work, although he did not see Smith.  He did not learn of any misrepresentations made by him, but the customers all said they preferred to give the work to Smith.  Smith has his own wagon and his own lists with his name printed thereon, and gets the work of his customers done at the Standard Laundry Company, conducted by Mr. Woest.

A temporary injunction was issued by this court on March 1, 1909, and Smith states, and his testimony is uncontradicted, that he has not since that time solicited any work from any of the customers on route 5.

From the evidence in this case, the court is of the opinion that the prayer of the petition ought not to be granted. It is the policy of the law to allow as large and unrestricted a competition in all branches of business as possible, to the end that the public may thereby be benefited, and that no man or set of men should secure a monopoly in any business or any branch of business. It is contrary to public policy and good morals to foster or encourage monopolies or restrictions in trade. Unless the defendant Smith, by virtue of his employment, learned something of the secret workings of plaintiff's business which he could not and would not have learned but for his said employment, and unless he either expressly or impliedly bound himself not to disclose or make use of these secrets, and unless he is now making use of those secrets which he could not have acquired except by virtue of his employment with plaintiff, and which he either expressly or impliedly bound himself not to divulge or make use of, then there is no foundation for the issuance of an injunction against him. This, as we understand it, is the rule laid down by the great weight of authority and sanctioned by reason and a fair sense of justice.

Let us examine this case in the light of this rule and see wherein the extraordinary process of injunction should be invoked and called into action to prevent the defendant Smith from soliciting whom he pleases, where he pleases and when he pleases, for laundry work.

In the first place the evidence does not support plaintiff's contention that Smith made use of his knowledge of plaintiff's secret concerning the list of customers on route number 5, acquired while in plaintiff's employ. Plaintiff must establish by a preponderance of the evidence that Smith took and carried away the list of route number 5, and made an improper use thereof to filch away its customers. Smith states positively that he did not take the list away; but left it in his desk at the laundry on Sycamore street. Stuckenborg says Smith gave him the keys, but said nothing of the cards of route number 5, and he

has not found them in the desk. Smith's testimony is to be given equal credence with Stuckenborg's, and the burden being on the plaintiff as to this matter, as well as every other averment necessary to make out its case, it fails on this point on the preponderance of the evidence. The fact that Smith took the cards from the Arcade office to the Sycamore street laundry, before he was informed of his discharge, does not indicate that he carried them away in face of the fact that he was not forbidden to take them over to the laundry, and his statement of why he took them over there.

Again there is no evidence that Smith while in the employ of plaintiff, solicited any patronage for himself from any customers on route number 5, but on the contrary his evidence is that he did not solicit until Friday, February 26, after he had left the employ of plaintiff.

Again the knowledge of the names and addresses of the customers on route number 5 and the times when they delivered and received their laundry was such a simple thing to learn that any person of ordinary intelligence could have acquired this knowledge by simply following plaintiff's wagon over the route, so that Smith could have learned all these facts if he had never been in the employ of plaintiff, and, therefore, this case does not come within the rule laid down by Judge Hosea in *Seifried* v. *Maycox*, 14 Low D., 536, cited and relied upon by counsel for plaintiff.

There was no express contract made by Smith whereby he agreed not to disclose or make use of any knowledge he might acquire of the secrets of the plaintiff's business, but it is contended, and held to be true, that there is an implied contract on the part of all servants that they will not make use of any secrets they may have learned of the master's business while in his employ, which they could not have learned except for the employment. But in the case at bar as we have pointed out, Smith could easily have learned all about these routes without being in the employ of plaintiff; and he further says in his testimony that he did acquire his knowledge of the customers and their addresses and was a friend of theirs long before the plaintiff knew them or had secured them as customers. The case of *Smith* v. *Kernan*, 5 Bull., 145, decided by Judge Harmon, is quite different from the case at bar.

In that case the plaintiff had a trade-mark on her bread; every loaf had stamped on it "Domestic" and this word had been used for years and become well known and famous throughout the city under this name. All of her employes quit work in a body in pursuance of a conspiracy to take away her entire trade, which was thereby ruined and paralyzed, and these employes headed by Kernan, who was the manager of her business and had an interest in the profits and was a *quasi* partner as found by the court, started a rival business, leaving the plaintiff without any employe whatever, and began to hold themselves out as making the same bread formerly made by plaintiff and used her trade-mark, "Domestic." And the drivers who had been with plaintiff and knew all the customers, went over the routes selling the bread of the defendant to the old customers, under the name of plaintiff's bread. Besides, the case was decided on a demurrer to the petition which, for the purpose of the demurrer, admitted all the allegations of the petition to be true.

Nor does the rule laid down in *Pearl Laundry* v. *Wertz*, by Judge S. W. Smith of this court, apply to the case at bar, because in that case the defendant was employed to build up the route for plaintiff and was paid therefor, and while in the employ of plaintiff he solicited the patronage of the customers for himself and afterwards went over the route in the exact order as to time and place that he had formerly done for plaintiff and solicited and secured the business for a competitor of plaintiff. The evidence in the case at bar does not disclose such facts, and this court is not disposed to go beyond the rule laid down by Judge Smith in the Wertz case, and is inclined to believe that, on the facts as shown in that case, he would have decided differently from the learned judge who announced that decision.

For the reasons stated the injunction will be denied and the petition dismissed at plaintiff's costs. The temporary restraining order will be vacated and dissolved.